UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

_____

In re:

PAUL K. CREASON,
dba PAUL K. CREASON DDS FAMILY
ORAL HEALTH CARE,

               Debtor.

Case No. 22-00988-swd
Hon. Scott W. Dales
Chapter 11 (Subchapter V)

_____/

MEMORANDUM OF DECISION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
                      Chief United States Bankruptcy Judge

A duly-served secured creditor in a class by itself declined to return its ballot either rejecting or accepting the chapter 11 (subchapter V) plan of small business debtor Dr. Paul Creason, a dentist operating as a sole proprietor in Grand Haven, Michigan. That omission, whether born of defiance or neglect, prompted the court to treat Dr. Creason's plan as a "cram down" plan under 11 U.S.C. § 1191(b), rather than a consensual plan under § 1191(a), as Dr. Creason, for good reason, would have preferred.[1] The court owes Dr. Creason a brief explanation.

Many of the usual chapter 11 confirmation requirements, though not all, apply in a small business case under subchapter V of title 11, under which Dr. Creason elected to proceed in seeking relief from this court, including § 1129(a)(8).[2] That section generally requires a debtor to establish, as a condition of confirmation, that each class of creditors has either "accepted" the plan, or is not impaired under it. 11 U.S.C. § 1129(a)(8). The section expresses Congress's preference for consensual plans, and acceptance (or non-impairment) for all classes of creditors certainly indicates consensus.

---

[1] The Bankruptcy Code is set forth in 11 U.S.C. §§ 101 *et seq.* Specific sections of the Bankruptcy Code are identified herein as "§ ___."

[2] *See* 11 U.S.C. § 1181.

Congress provided a precise statutory definition of what constitutes acceptance in this area, complete with a dollar amount and numerosity requirement, but perhaps neglected to address what happens when a class of creditors fails to participate in balloting. Perceiving a gap, some courts adopt the concept of "deemed acceptance," a convenient though extra-statutory response to the problem. *See, e.g., In re Ruti-Sweetwater, Inc.*, 836 F.2d 1263 (10th Cir. 1988). Here, because Dr. Creason put Everest Business Funding ("Everest") in its own class (Class III), and because Everest did not return its ballot, Class III did not formally accept the plan. In an effort to demonstrate compliance with § 1129(a)(8), Dr. Creason's counsel cites *Ruti-Sweetwater* and another case within the Tenth Circuit that, naturally, followed that circuit's "deemed acceptance" precedent. This court is not persuaded.

First, although no interested party balked at counsel's citation to *Ruti-Sweetwater* and the concept of "deemed acceptance" by Everest – including Everest – the court is constrained by its independent duty to ensure that a debtor meets all statutory requirements as a condition of confirming a plan. *Cf. United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 277 n.14 (2010) ("Section 1325(a) does more than codify this principle [that "courts have the discretion, but not the obligation, to raise on their own initiative certain nonjurisdictional barriers"]; it *requires* bankruptcy courts to address and correct a defect in a debtor's proposed plan even if no creditor raises the issue.") (original emphasis). The similarities in the language of § 1325(a) at issue in *Espinosa* and § 1191(a) at issue here, and the Supreme Court's relaxation of the principle of party presentation in the face of such language, are too hard to ignore.

Second, as counsel acknowledged during the hearing, *Ruti-Sweetwater* is an out-of-circuit case representing the minority position. Indeed, a leading bankruptcy commentator has described it as "an unfortunate decision…." 7 Collier on Bankruptcy ¶ 1129.02 (16th ed. 2022). In the thirty-five years since the Tenth Circuit rendered that decision, no reported decision within our circuit relied on the "deemed acceptance" holding, as far as this court's own research revealed.

Third, the court finds it impossible to reconcile the notion of "deemed acceptance" with the formal requirements of Rule 3018(c), governing the "form of acceptance or rejection":

> An acceptance or rejection shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent, and conform to the appropriate Official Form.

Fed. R. Bankr. P. 3018(c); *see also* Fed. R. Bankr. P. 9009(a) (generally requiring that the Official Forms "shall be used without alteration, except as otherwise provided in these rules . . ."). Everest did not use any form, let alone the official one, and we should not treat the creditor as if it did, contrary to the rules. In a real sense, Congress and the Supreme Court jointly author the rules and this court is not at liberty to pick and choose which ones to obey. *See* 28 U.S.C. § 2075. When the parties ignore the rules, a court may step in to enforce them; when the court itself ignores them, the rule of law suffers.

Finally, regarding Everest's non-acceptance, the court recognizes that today's approach vests considerable power in the hands of a non-participating creditor with control over an entire class. As a policy matter, it is probably unwise to allow a creditor such as Everest to, in effect, "cram down" on a debtor the consequences of a "cram down" confirmation under § 1191(b), where most of the creditors favor a consensual plan.[3] Although the court might favor the Tenth Circuit's approach were it free to do so (especially in the small business (subchapter V) setting), "courts do not sit to assess the relative merits of different approaches to various bankruptcy problems." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 13-14 (2000). "Achieving a better policy outcome … is a task for Congress, not the courts." *Id.*

As noted above, Everest's failure to return the ballot flipped the confirmation from consensual to cram down, thereby invoking the "fair and equitable" standard of § 1129(b)(2)(A) under § 1191(c)(1). That said, and as discussed during the confirmation hearing, Everest's asserted security interest is vulnerable to avoidance under § 544(a), given that its financing statement improperly identified Dr. Creason as an "organization" with the name "PAUL KEVIN CREASON dba DR PAUL CREASON FAMILY DENTISTRY," obviously more than his parents had in mind when they named him. *See* M.C.L. § 440.9503. As a result, the plan treats Everest as an unsecured creditor, notwithstanding its claimed status (and plan classification) as secured.

---

[3] In a subchapter V case, the consequences of cram down include, for example, the continued involvement and expense of a trustee, the postponement of, or potential changes to the scope of, the discharge, and the applicability of the "fair and equitable" standard of § 1129(b)(2)(A). *See, e.g.*, 11 U.S.C. § 1183(c)(1) (termination of trustee services), § 1191(b) (incorporation of the fair and equitable standard), and § 1192 (changes to discharge). At the confirmation hearing, chapter 11 trustee Kelly Hagan helpfully suggested that cause exists in this case to permit Dr. Creason to disburse plan payments, notwithstanding confirmation of the plan under § 1191(b), and the court agrees. *See* 11 U.S.C. § 1194(b) (permitting court to vary baseline rule that trustee ordinarily distributes plan payments when plan is confirmed as cram down under § 1191(b)). This certainly mitigates, but does not eliminate, the hardships associated with cram down.

Dr. Creason's counsel stated on the record, without contradiction, that his search of the Michigan Secretary of State's UCC database did not uncover Everest's financing statement. The court, for its part, reviewed the financing statement (attached to Everest's Proof of Claim No. 18) and perceives the same defect that counsel identified, making the security interest vulnerable to a trustee's, or debtor-in-possession's, exercise of the strong-arm powers. Moreover, using the Michigan Secretary of State's search logic described in Admin. R. 440.510, it appears quite likely that a search using the name Everest inserted in its financing statement would not exclude most of the text following Dr. Creason's surname, and therefore would not save the description from being invalidated as seriously misleading. *See* M.C.L. § 440.9506(3). Suffice it to say that treating as unsecured the holder of an inevitably avoidable security interest offers the "indubitable equivalent" of its claim, as required for confirmation under § 1191(b). *See* 11 U.S.C. § 1191(c)(1) (incorporating § 1129(b)(2)(A)(iii) as rule of construction). On this point, Everest's failure to participate in the confirmation process certainly backfired. The court finds that the plan is fair and equitable in its treatment of Everest, and § 1141(c) permits revesting of Everest's supposed collateral in Dr. Creason, free and clear of Everest's lien.

At the confirmation hearing, without objection from the trustee or the United States Trustee, the court considered Dr. Creason's Ballot Report and Plan Confirmation Memorandum (ECF No. 128) essentially as a proffer of support for confirmation, which the court accepts except as provided herein with respect to Everest's supposed acceptance. In addition, the court regards the former objection of Pentagon Federal Credit Union as resolved on the terms reflected in ECF No. 129.

The court will expect a proposed confirmation order conforming to this Memorandum of Decision and Order, and the agreements otherwise reflected on the record, from Dr. Creason's counsel with signatures of the trustee and counsel for the United States Trustee.

The court applauds the spirit of cooperation that prevails in the Western District's bar in general, and in subchapter V cases, in particular. Nevertheless, although consensual confirmation is a laudable goal, it cannot come at the expense of the rules and the statute, even where, as here, they prove inconvenient.

NOW, THEREFORE, IT IS HEREBY ORDERED that:

1. The court will confirm Dr. Creason's amended plan (ECF No. 122) under § 1191(b) in a separate order conforming to the Memorandum of Decision and Order;
2. The separate order shall reflect the court's decision to permit Dr. Creason to serve as disbursing agent under § 1194(b); and
3. Dr. Creason's counsel shall promptly submit that separate order as provided herein.

IT IS FURTHER ORDERED that the Clerk shall promptly serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Debtor's counsel, the trustee, the United States Trustee, the entities listed on the matrix, and all parties requesting notice of these proceedings.

END OF ORDER

**IT IS SO ORDERED.**

**Dated February 23, 2023**



Scott W. Dales
United States Bankruptcy Judge